# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| JAY VANN, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No.: |
| V. ) | |
| ) | |
| WHEATLAND TUBE, LLC AND ) | JURY TRIAL DEMANDED |
| ZEKELMAN INDUSTRIES, INC, ) | |
| ) | |
| DEFENDANT(S). ) | |

## COMPLAINT

## JURISDICTION

1. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

3. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

4. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## PARTIES

5. Plaintiff, Jay Vann, ("Plaintiff" or "Vann") is a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendants in the counties composing the Northern District of Alabama, Southern Division during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Northern District of Alabama, Southern Division.

6. Defendant Wheatland Tube, LLC ("Defendant" or "the company") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

7. Defendant Zekelman Industries ("Defendant" or "the company") is a parent company doing business in the State of Alabama, through its subsidiary, Wheatland Tube, LLC (collectively "Defendants") and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

8. Defendants employed at least fifteen (15) people during the current or preceding calendar year.

9. Defendants employed at least five hundred (500) people during the current or preceding calendar year.

10.	Defendants' gross annual revenue exceeds $700,000.00.

**FACTS**

11.	Plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

12.	Jay Vann began his employment with defendant on or about November 23, 2023, as a Machine Operator.

13.	Vann is a male of African Ancestry, the race colloquially referred to as "Black."

14.	In early 2024, Vann started noticing that male employees were behaving inappropriately towards a female employee, Persephonee Steele.

15.	Male employees, including managers, were commenting on her physique and seeking sexual encounters.

16.	Vann also witnessed an incident in the late winter of 2024, in which Reginald Davis pinched Anthony Thompson on his nipple and then looked at Steele and said, "I wish this was you."

17.	Ms. Steele eventually reported this conduct to the company, which instituted an investigation.

18.	Vann was interviewed as part of the investigation, and he truthfully reported that he witnessed some of the sexually inappropriate behavior.

19. On or about April 18, 2024, Vann reported a co-worker named Dominque because she was repeatedly propositioning him for a romantic relationship.

20. On or about April 23, 2024, Vann was bent over on the floor when a contractor named Frank came up behind and touched him with an object near his genitals.

21. Vann jumped up in surprise and asked him, "Was that your hand?"

22. In response, Frank showed Vann a drill-like tool.

23. Vann immediately reported the incident to the Plant Manager, Chris Smith.

24. Vann also wrote on a whiteboard on the warehouse floor, something along the lines of "keep your hands off of Jay Vann."

25. The next day, Vann confronted Frank about the inappropriate sexual touching.

26. When Vann told Frank that he was upset, Frank joked, "I thought you liked it."

27. Defendant did not do anything about the sexually inappropriate behavior Vann was enduring.

28. On or about May 30, 2024, Vann was at the time clock when the second shift Supervisor, Lamont, called him a "Soft Ass Nigga."

29. Vann was offended to be referred to by a racial slur.

30. Vann reported Lamont to Human Resources.

31. The next day, Vann forwarded an email complaining about the slur to Barry Zekleman, the company President.

32. The company began an investigation into Vann's complaint.

33. After Lamont called Vann the slur, other employees started referring to Van as a "S.A.N."- referring to Lamont's comment.

34. A week or so later, Lamont was terminated.

35. On or about July 28, 2024, Vann was involved in a near-miss incident when he fell at work.

36. Vann reported the incident to his supervisor, Corey Gonzalez.

37. Vann also requested to take PTO because work was slow.

38. Gonzalez approved Vann's PTO.

39. When Vann returned to work, he was written up, allegedly, because he failed to report the fall and for leaving early.

40. Vann did not violate the policies alleged, as he went to Gonzalez regarding both the fall and taking PTO.

41. On or about September 3, 2024, Vann was laid off by the company due to "lack of work."

42. There was no "lack of work," as the company posted a position for the same job within weeks of terminating Vann.

## COUNT I: TITLE VII RETALIATION

43. Plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

44. Plaintiff was qualified for his position and able to perform the essential functions of the job.

45. On or about April 23, 2024, Plaintiff engaged in protected activity, when he reported discrimination based on race to the company's HR.

46. On or about April 23, 2024, Plaintiff engaged in protected activity when he reported discrimination based on race to the President of the company.

47. Around July 28, 2024, Plaintiff was involved in an accident where he fell and requested to take PTO.

48. Plaintiff reported the fall to and requested PTO from his supervisor, but was written up when he returned to work for not reporting the fall and leaving early.

49. On or about September 3, 2024, Defendants terminated Plaintiff's employment.

50. Defendants claimed that Plaintiff was laid off for "lack of work," but posted his same position within weeks.

51. But for Plaintiff's protected activity, Defendants would not have written Plaintiff up after his fall and PTO request.

52. But for Plaintiff's protected activity, Defendants would have retained Plaintiff in his position as a Machine Operator.

53. Defendants violated Title VII by writing Plaintiff up and terminating Plaintiff for engaging in protected activity.

54. Because of Defendants' violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT II: 42 U. S. C. § 1981 RETALIATION

55. Plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

56. Plaintiff was qualified for his position and able to perform the essential functions of the job.

57. On or about April 23, 2024, Plaintiff engaged in protected activity when he reported discrimination based on race to the company's HR.

58. On or about April 23, 2024, Plaintiff engaged in protected activity when he reported discrimination based on race to the President of the company.

59. Around July 28, 2024, Plaintiff was involved in an accident where he fell and requested to take PTO.

60. Plaintiff reported the fall to and requested PTO from his supervisor, but was written up when he returned to work for not reporting the fall and leaving early.

61. On or about September 3, 2024, Defendants terminated Plaintiff's employment.

62. Defendants claimed that Plaintiff was laid off for "lack of work," but posted his same position within weeks.

63. Plaintiff's protected activity was a motivating factor in Defendants' decision to write Plaintiff up for violations he did not commit – failing to report a fall and leaving early.

64. Plaintiff's protected activity was a motivating factor in Defendants' decision not to retain Plaintiff in his position as a Machine Operator.

65. Defendants violated the 42 U. S. C. § 1981 by writing Plaintiff up and terminating Plaintiff, in whole or in part, for engaging in protected activity.

66. Because of Defendants' violation of the 42 U. S. C. § 1981, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT III: TITLE VII – SEX- DISCHARGE

67. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

68. Plaintiff is a mana man.

69. Plaintiff was qualified for the position of Machine Operator.

70. Defendants terminated Plaintiff's employment on or about September 3, 2024.

71. Fersophonee Steele engaged in the same or similar conduct but remained employed.

72. Steele is a woman.

73. Defendants' actions in terminating Plaintiff's employment violated Title VII.

74. Because of Defendants' violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

75. Defendants did not terminate Fersphonee for the same or similar reason.

76. Defendants' sex was a motivating factor in Defendants' decision to terminate Plaintiff's employment.

77. Because of Defendants' discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

## COUNT IV: TITLE VII – SEX HOSTILE WORK ENVIRONMENT

78. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

79. In early 2024, male employees, including managers, were making sexually inappropriate comments about a female employee, Persephonee Steele.

80. Steele reported this conduct to the Defendants, who started an investigation.

81. Plaintiff reported in his interview that he witnessed some of the sexually inappropriate behavior.

82. On or about April 18, 2024, Plaintiff reported a coworker, Dominque, because she was repeatedly propositioning him for a romantic relationship.

83. On or about April 23, 2024, Plaintiff was bent over when a contractor named Frank came up behind and touched him with an object near his genitals.

84. Plaintiff immediately reported the incident with Frank to the Plant Manager, Chris Smith.

85. Defendants did nothing to address the sexually inappropriate behavior.

86. Dominque and Frank harassed Plaintiff because of his sex.

87. The harassment created a hostile work environment for Plaintiff.

88. Defendants failed to take prompt remedial action to remedy the continuous sexual harassment.

89. Plaintiff suffered damages because of the hostile work environment including loss of pay, benefits, and mental anguish.

## COUNT V: TITLE VII - RETALIATION

90. Plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

91. Plaintiff was qualified for his position and able to perform the essential functions of the job.

92. In early 2024, Plaintiff engaged in protected activity when he provided information during the investigation into Persephonee Steele's complaints of sexual harassment.

93. On or about April 18, 2024, Plaintiff engaged in protected activity when he reported a coworker named Dominque for sexual harassment.

94. On or about April 23, 2024, Plaintiff engaged in protected activity when he reported a contractor named Frank for sexual harassment.

95. Around July 28, 2024, Defendants wrote Plaintiff up for failing to report a fall and for leaving early, even though Plaintiff reported the fall to and requested to use PTO from his supervisor, Corey Gonzalez.

96. On or about September 3, 2024, Defendant terminated Plaintiff's employment.

97. Defendants claimed that it terminated Plaintiff due to "lack of work," but proceeded to post Plaintiff's position within weeks of laying him off.

98. But for Plaintiff's protected activity, Defendants would have retained Plaintiff in his position as a Machine Operator.

99. Defendants violated Title VII by terminating Plaintiff for engaging in protected activity.

100. Because of Defendants' violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendants and at the Defendants' request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B. Grant Plaintiff a permanent injunction enjoining the Defendants, its agents, successors, employees, attorneys and those acting with the Defendants and at the Defendants' request from continuing to violate the terms of Section 1981;

C. Enter an Order requiring the Defendants to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D. Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E. Attorneys' fees and costs;

F. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

/s/ *Kira Fonteneau*
Kira Fonteneau

**OF COUNSEL:**

THE WORKERS FIRM LLC

2 North 20th St, Suite 900
Birmingham, AL 35203
(404) 382-9660
kira@theworkersfirm.com

**PLEASE SERVE DEFENDANTS AS FOLLOWS**

**WHEATLAND TUBE, LLC & ZEKELMAN INDUSTRIES, INC**
**C/O Wheatland Tube, LLC**

**227 West Monroe Street**

**Chicago, IL 60606**

**Zekelman Industries**